27701. DARNELL v. BETTY'S CREEK BAPTIST CHURCH et al.

ARGUED FEBRUARY 12, 1973 — DECIDED APRIL 16, 1973.

*Ed M. Keener, Blalock & Fowler, Larry Fowler,* for appellant.

*McClure, Ramsay & Struble, Alton M. Adams,* for appellees.

GRICE, Presiding Justice. This is an appeal from a jury verdict and judgment of the Superior Court of Rabun County finding in favor of the Betty's Creek Baptist Church as to the true dividing line between the church property and that of Ray Darnell, the appellant.

The litigation began on July 21, 1970, when Ray Darnell filed a complaint in equity against the deacons and agents of Betty's Creek Baptist Church, alleging in essence as follows: that he was the owner and in possession of a certain described tract of land located in Rabun County, Georgia; that the deacons and agents of the church had entered upon a portion of this land, and moved dirt, done landscape grading and begun construction of a building thereon, over his objections; and that these actions constituted a wilful and continuing trespass for which he had no adequate remedy at law since the church was unincorporated and insolvent.

The prayers were for temporary and permanent injunction, and the court temporarily restrained the

church pending a rule nisi hearing.

Thereafter, on December 28, 1970, Darnell filed an application in the Court of Ordinary of Rabun County seeking to have the boundary line between his and the church's land processioned.

The Rabun County surveyor, J. G. Nixon, was subsequently disqualified as a processioner by the court of ordinary, upon application by Darnell, for having previously surveyed and recorded a plat of the church property which would be alleged to be erroneous in the processioning proceeding. The ordinary ruled that Nixon was "interested in the result of said proceeding" and appointed a temporary county surveyor.

After the return of the processioners and their survey plat was filed with the ordinary, the church appealed to the superior court on August 24, 1971, as provided by Code § 85-1609. A copy of the original protest plat made by J. G. Nixon was attached thereto. A judgment of the ordinary disqualifying Nixon was also appealed and subsequently dismissed by order dated February 28, 1972, but it is not in issue here.

On April 11, 1972, Darnell filed a second complaint in equity against the church and church officers in the Superior Court of Rabun County. It essentially alleged that he was an adjoining landowner; that there was a dispute between the parties as to the location of their common boundary line; that a processioning proceeding was then pending which had not been tried; that he was suffering great injury in not being able to establish his land lines and a proceeding in law was an inadequate remedy; that certain church officials and J. G. Nixon had formed a fraudulent conspiracy to take and hold his land by constructing a building thereupon; that plats made by the processioners and personnel from the Examining Board on the field trial of J. G. Nixon show this building to be on his land but the church continues to occupy it; and that the protest plat was made by one who had been

disqualified by the ordinary and the superior court.

He prayed that the church be restrained and enjoined from occupying and using the building, and for other equitable relief.

On May 5, 1972, following a hearing, the court denied the temporary injunction.

Subsequently, the church and its officers filed an answer and a counterclaim for a bill of peace. They denied the essential allegations and asked that the aforementioned actions be consolidated for trial before a jury to decide all disputed issues of fact.

Upon the trial of the three consolidated actions the jury returned a verdict in favor of the church.

On August 26, 1972, the trial court entered an order in which it found that the jury verdict was substantially in accord with one of the three forms submitted to it by charge and that since no objection had been made to the acceptance of this verdict by the court, "the true dividing line between Ray Darnell and the Betty's Creek Baptist Church is as shown on a plat of Survey by J. G. Nixon, dated August 20, 1972, from a survey of November, 1966, which plat was the protest plat filed by amendment to Defendants' Protest, which amendment was filed and approved after hearing on the 21st day of August, 1972."

The appeal is from this judgment. Eight errors are enumerated.

■ In the first enumeration of error the appellant Darnell contends that a deed of trust dated March 1, 1897, contained sufficiently definite and adequate terms in its description of the property now owned by the church to be surveyable from this description.

The property was described therein as follows:

"Being a part of Lot Number 179 in the 2nd Land District of said County of Rabun, and State of Georgia, beginning on a rock at the Northwest corner of the graveyard, thence West and with the Betty's Creek Road to a rock; thence North 40 yards to an oak; thence East

120 yards to a pine; thence South 40 yards to a rock at the road; thence South 65 yards to an oak; thence West 45 yards to oak; thence North 60 yards to the beginning. Containing three (3) acres, more or less."

One of the primary questions of fact upon the trial was whether an oak tree in the southwest corner of the church cemetery was the last oak called for in the above description. Both parties agreed that all the other corners were missing. Thus the controlling issue was the proper method of making a survey to determine the correct boundaries of the church property.

Relying upon the oak in the cemetery as being a corner still in existence, the appellant argues that the proper method to determine the boundary lines was to begin at the southwest corner of the cemetery, run north to the road, come back to the beginning corner, and then run in reverse order the courses and distances surveyable from the beginning corner. It is insisted that two points along the road are thereby established, with the distance between the points being the distance not given in the deed.

The church, on the other hand, relies upon the method of survey employed by J. G. Nixon, which was referred to in the record as "restitution by process of elimination" or the "hole in the doughnut" method. This, in essence, consists of locating the boundaries of a central parcel by surveying the boundary lines of all the surrounding property owners.

This enumeration of error is predicated upon a conflict in the testimony of two expert witnesses: the surveyor for the processioners, R. A. Hathaway, and the surveyor for the church, J. G. Nixon.

The testimony given by the processioners and their surveyor revealed that in their opinion a consideration of the boundary lines of the adjoining landowners as shown by their recorded deeds was unnecessary because the 1897 deed description alone was sufficient to obtain an

accurate survey of the property. They further testified that they did not investigate the possibility of their survey cutting into two portions the property lying to the east and north of the church tract.

The church agreed that the description was sufficient to convey an ascertainable tract of land, but contended that since all of the monuments representing the corners called for in the 1897 deed were missing, a consideration of the boundary lines of the surrounding landowners was necessary in order to locate these corners.

In our view, the issue as to whether the oak in the church cemetery was the original corner called for in the 1897 deed was a question of fact for the jury to determine. From the verdict it is apparent that it determined adversely to the appellant that the tree was not in fact a corner. In such a case, as admitted by the processioners' surveyor, the 1897 deed could not be surveyed without reference to the landlines of the adjoining owners.

Accordingly, this enumeration cannot be sustained.

■ The appellant's second enumeration is that the trial court erred in allowing the testimony of the surveyor for the church, J. G. Nixon, construing the 1897 deed from sources outside the deed and subsequent conveyances of adjoining lands.

The appellant insists that the 1897 deed was exact in its description except for the distance between the beginning rock at the northwest corner of the cemetery to the second rock on Betty's Creek Road, which was the only distance not recorded in the deed. However, he urges that this would not cause the deed to be uncertain or defective so as to render it void and incapable of exact survey since a survey could be started with the last call, the oak in the cemetery, and reverse the deed description, thereby tying in the unknown distance from the first to the second call in the deed.

Since we ruled in the preceding division of this opinion that the issue as to whether the oak in the cemetery was

the last call in the 1897 deed presented a question of fact for the jury to determine, this argument is without merit. It follows that the trial court correctly allowed the surveyor for the church to describe to the jury his method of locating the corners by reference to the boundary lines in conveyances to the adjoining landowners.

■ Enumeration of error three urges that the evidence was not sufficient to overcome the prima facie case of the return of the processioners, and the verdict of the jury upon which the judgment was based had no evidence to support it.

The appellant cites in support of this Code § 85-1606, which provides in essence that the county surveyor, with the processioners, shall arrive at the true lines and certify a plat of the same; "and in all future disputes arising in reference to the boundary lines of such tract, with any owner of adjoining lands, having due notice of such processioning, such plat and the lines so marked shall be prima facie correct, and such plat, certified as aforesaid, shall be admissible in evidence without further proof."

It is the appellant's contention that the church did not carry the burden of proof in this case in that the testimony of the church's surveyor, J. G. Nixon, was inconsistent and nonresponsive to the questions and objections interposed by his counsel.

We do not agree.

In regard to Code § 85-1606, supra, this court has stated that "The subject-matter of this section is the effect to be given to a plat made by the surveyor under the superintendence of the processioners, and filed as provided by law in subsequent disputes between the coterminous landowners . . . The return of the processioners and the plat of the surveyor are admissible in evidence in the trial of an issue formed by a protest to the processioners' return. They serve to make out a prima facie case, and *in the absence of any other evidence,* would

authorize a verdict sustaining the return. *Castleberry v. Parrish,* 135 Ga. 527 (69 SE 817)." *Georgia Talc Co. v. Cohutta Talc Co.,* 140 Ga. 245, 247 (78 SE 905). (Emphasis supplied.)

The record here clearly reveals that there was sufficient evidence to overcome the presumption that the return of the processioners was prima facie correct for several reasons.

Hubert Lovell, a registered surveyor, testified that he had examined a copy of the processioners' return and found that an encroachment was shown on the adjoining Icie Bleckley estate, which in effect cut that estate in two; and that the boundary line between the church property and the Icie Bleckley estate in the J. G. Nixon plat was "very close" and "very similar" to that established by his survey.

An heir of the Icie Bleckley estate, James Edward Bleckley, swore that none of the family received notice of the processioning; and that when they discovered the line run across their property by the processioning survey they hired Lovell to survey the estate. Another heir, Miss Martha Sue Bleckley, stated that subsequent to the processioning proceeding, of which she was not notified, she had learned that portions of the Icie Bleckley estate had been designated as belonging to the church, and that she had never known of the church to make any claims to any part of this property.

L. D. Hoppie, who helped survey the Darnell property in the 1930's, testified that the oak tree in the corner of the cemetery which was the corner in the 1897 deed was no longer there; that the original oak "was a marked corner, it was a bruised tree . . . where you take an axe and hack marks off like the surveyors did"; and that the church building was four to five hundred feet from the Darnell property line.

There was also evidence that the processioners' survey was invalid. Harry Vinson, one of the processioners,

testified that "we wanted to give them what was called for in their tract; the way the tract was located it would not have given them the frontage that the deed called for and we did not want to draw it that way and we wanted to give the church the benefit of the doubt." When he was asked: "Well, do you think that the processioners can develop a new line?" he answered: "We . . . would not be putting in a new line, but we would be putting in a true line, that is my understanding of it."

This testimony indicates that the processioners violated the rule that the proceeding "is applicable only to the location of land lines which once were marked or established. It is not available as a proceeding to *make or establish* new lines between adjacent landowners, nor as a substitute for an action to try conflicting claims of title to land. [Cits.]" *Wheeler v. Thomas,* 139 Ga. 598 (77 SE 817). (Emphasis supplied.)

From the foregoing and other testimony, it is apparent that the jury had ample evidence before it from which to conclude that the processioners' survey was not correct, and to overcome their prima facie findings. Accordingly there is no merit in this enumeration.

■ The appellant's fourth enumeration is that the trial court erred in allowing the church's surveyor, J. G. Nixon, to construe the 1897 deed in the absence of a prayer for reformation.

The survey conducted by him for the church did not attempt to construe the intent of the grantor.

As previously stated, the church proceeded under the theory that the disappearance of the eight monuments called for in the deed made the description inexact or subject to error unless some or all of the corners could be established. Therefore, since the same corners were referred to in the deeds of the adjoining property owners, by surveying their lines the location of the corners in the church's deed was made to appear.

This enumeration is not meritorious.

■■ The appellant's fifth and sixth enumerations of error deal with admission into evidence of the church's amended protest plat on the sixth day of the trial.

It is contended that the trial court erred in allowing the amendment to the church's protest plat over the appellant's objection because notice was not given as required by Code § 24-3384; "and that the original protest plat in effect was not a protest plat of the property in dispute" since the amendment for the first time described property as belonging to the church.

Code § 24-3384 is inapplicable here. It involves notice of commencing a survey before it can be received in evidence rather than the amendment of pleadings.

In this regard this court has held: "The superior court rule [present Code § 24-3384], that no survey shall be received in evidence unless it appears that at least ten days notice of the time of making the survey was given to the opposite party, refers to official surveys. An official survey made after proper notice is admissible on a certificate of its correctness by the officer. But a plat of survey, though not made by an officer or after notice, when the person who made it testifies that it is correct is admissible in evidence. *Maples v. Hoggard,* 58 Ga. 315." *Wooten v. Solomon,* 139 Ga. 433, 436 (77 SE 375).

The testimony here of J. G. Nixon, who made the church's survey, showed that the amended plat was introduced to correct errors in the original protest plat, not to change it. He stated that the corners in the amended plat were "exactly as they were" in the original protest plat, but that the original protest plat was not complete in that it did not connect the lines.

Since the original plat did not clearly show the church boundaries, the amendment was authorized under the provisions of Code Ann. § 81A-115 (a, b) (Ga. L. 1966, pp. 609, 627; 1972, pp. 689, 694). The trial judge allowed the amendment after a hearing on the church's motion to amend and the appellant neither alleged prejudice nor

moved for a continuance to meet the evidence, as provided for in this section.

Accordingly, these contentions are not maintainable.

■ Enumeration of error seven relates to overruling the appellant's objections to alleged nonresponsive comments of the church's surveyor J. G. Nixon in his testimony. The appellant insists that this prejudiced his position before the jury.

We have carefully reviewed this testimony and we do not agree. It was competent and not subject to the objections made. Therefore there was no merit in the objections. See *Harris v. Ernest L. Miller Co.,* 213 Ga. 748 (1) (101 SE2d 715).

■ The appellant's final enumeration objects to the admission into evidence of certain plats because they did not represent the description in the 1897 deed and did not properly identify the land belonging to the church.

The trial court overruled the objections of appellant's counsel to the admission of these plats, which represented early surveys of tracts adjoining the church property, upon the ground that J. G. Nixon had testified concerning them and used them during his examination, and that they might "be of some use to the jury in determining these issues."

We find no error.

For the foregoing reasons, the judgment is affirmed.

*Judgment affirmed. All the Justices concur.*